John W. Dillon – SBN 296788
jdillon@dillonlawgp.com
Dillon Law Group APC
2647 Gateway Road, Suite 105, No. 255
Carlsbad, CA 92009
(760) 642-7150

Konstadinos T. Moros – SBN 306610
kmoros@saf.org
Second Amendment Foundation
12500 NE 10th Pl.
Bellevue, WA 98005
(425) 454-7012

Attorneys for Plaintiff Second Amendment Foundation, Andrew Moore, and James Treuel

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| SECOND AMENDMENT FOUNDATION, ANDREW MOORE, an individual; JAMES TREUEL, an individual, | CASE NO: |
| | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| Plaintiffs, | **42 U.S.C. §§ 1983 & 1988** |
| v. | |
| CONTRA COSTA COUNTY; CONTRA COSTA COUNTY SHERIFF'S OFFICE; SHERIFF DAVID LIVINGSTON, in his official capacity; and DOES 1-10, | |
| Defendants. | |

1

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, Second Amendment Foundation, Andrew Moore, and James Treuel, bring this action against Defendants Contra Costa County, Contra Costa County Sheriff's Office, Sheriff David Livingston in his official capacity (collectively, "Defendants"), and Does 1-10, inclusive, and make the following allegations:

**INTRODUCTION**

1.     This action challenges the concealed carry weapon ("CCW") permit issuance policies and practices of the Defendants that prohibit CCW applicants and those issued valid CCW permits from including and attaching popular, safety-enhancing attachments on the handguns they legally carry for self-defense as part of the CCW permit. Specifically, Defendants' policies and practices prohibit the attachment and use of red dot sights and flashlights on CCW firearms. Additionally, Defendants outright ban the carry of Single Action Only (SAO) firearms, including, by name, 1911 platform ("1911-Style") handguns, which are themselves quite popular. These policies violate the Second Amendment under the standard set forth in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) and are thus unconstitutional.

2.     The Second Amendment protects law-abiding citizens' right to "keep" – meaning to acquire, have, and possess — and to "bear" — meaning "to carry on one's person in case of confrontation" — weapons that are in common use for lawful purposes. This includes handguns with commonly used safety and accuracy-enhancing features. *See District of Columbia v. Heller*, 554 U.S. 570 (2008).

3.     Since the inception of firearms, and certainly over the last hundred years, firearms have come equipped with sights, with which the user can more accurately direct his shots. For many years, the standard in sights have been "iron sights," a simple affixed metal post at the muzzle of the gun, and a rear sight with a notch, affixed to the rear of the slide. By aligning the post inside the notch, the user is able to discern the gun was aimed on target. This can be difficult to do in a high-

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

stress situation, or if the user has vision challenges – like the need for reading glasses to see clearly up close. When someone is forced to use a firearm in self-defense, it is paramount that they be able to place their shots precisely where they are intended as effectively as possible.

4.    Modernly, "iron sights" have been improved to include adjustable sighting systems and "night sights" that glow in the dark and make it easier to see your sights in low-light settings.

5.    Fortunately, modern sighting systems have continued to progress and allow gun owners to place their shots, as effectively as possible, precisely where they are intended. Red dot sights, which have become ubiquitous for handguns in recent years, help the shooter acquire the sight faster than traditional iron sights and simplify the aiming process.

6.    A red dot sight is a small optical aiming device mounted on a handgun that projects an illuminated red dot onto a lens. The shooter places the red dot on the target instead of aligning traditional front and rear iron sights, making aiming faster and often easier, especially at longer distances and in low-light settings. Red dot sights place the target and the reticle on nearly the same optical plane, allowing a single point of focus on the target.

7.    Red dot sights much more easily allow the shooter to keep both eyes open, which improves peripheral vision and can make them more aware of other people in the vicinity. Moreover, most red dot sights can be attached to the handgun while still allowing the "iron sights" to remain, which permits full functionality and use of the iron sights even with an attached red dot sight. Finally, they have better low-light performance, as the dot remains visible in dim conditions where iron sights might be hard to see.

3

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF



Red dot sights allow target focus, keeping attention fully on the threat.
Source: https://www.recoilweb.com/too-much-red-dot-a-quick-reminder-129022.html

8.     Handheld flashlights have been used by citizens and law enforcement alike for decades for the simple reason that they perform a helpful task: providing additional light where it is otherwise insufficient or absent. Half of every day is in darkness, and criminals frequently exploit the perceived security of darkness to commit unlawful acts. In a defensive situation, a flashlight allows a person to determine who is actually present, ensuring that potential threats can be identified while innocent individuals are recognized and protected.

9.     Handgun-mounted flashlights, which are small flashlights that are mounted to the front of a handgun underneath the barrel, are commonly used for these very reasons. Flashlights mounted to a handgun provide the same obvious benefits of a handheld flashlight, while allowing the user to keep both hands securely on their firearm, free to aim and operate the firearm with better precision. In the event a violent threat creates the concurrent need for both a gun and a light, a flashlight mounted to the gun can provide lifesaving aid. Having identified a threat

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

(with the use of a handheld light, for instance), a flashlight mounted to your handgun allows the user to keep that threat illuminated while effectively operating their firearm with both hands.

 

Modern weapon-mounted lights are critical aids for defensive pistols. As one article explains, "[p]ositive identification means you can see a threat and visually establish that it is, in fact, a threat. In low-light situations, there is never a reason to fire blindly in the dark."

Source - https://inside.safariland.com/blog/everything-you-need-to-know-about-weapon-mounted-lights/

10.     For these reasons, weapon-mounted lights (referred to herein as "flashlights" for simplicity) are popular on handguns. Their advantage is self-explanatory: in a self-defense situation that occurs somewhere poorly lit, they allow the shooter to turn on a light and confirm the exact nature of the threat they are facing (or properly identify innocent non-threats) and observe when that threat is no longer present.

11.     Additionally, while single-action only ("SAO") firearms have a venerable history, these too are prohibited by Defendants' policies and practices.

12.     The Colt 1911 is a semiautomatic pistol, meaning it automatically loads

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

a new cartridge into the firing chamber after each shot is fired—just like all modern semiautomatic pistols approved for sale in California. It is also a "single-action" pistol, meaning the trigger performs a single function—releasing a pre-cocked hammer to fire the pistol. Because the hammer must be cocked before the pistol can fire, 1911-style pistols are commonly equipped with multiple manual and passive safety features to prevent unintended discharge while the pistol is being carried. The basic design of the Colt 1911, the standard-issue sidearm of the United States Army from 1911 until 1985, remains in common use today, is commonly carried by civilians and law enforcement, and includes both full-size and compact adaptations designed specifically for everyday carry. In fact, the 1911-style pistol has been commercially sold in the United States for more than a century and remains one of the most popular handgun designs in the country.

13. Just recently, several SAO semiautomatic firearms have been added to the California Handgun Roster and thus approved for sale in this state, after undergoing the required safety tests by the California Department of Justice.[1] These pistols are chosen for improved accuracy, durability, and reduced recoil. The 1911 platform also includes both thumb and grip safeties, features frequently touted by the state itself as worthwhile inclusions to firearm design. These redundant safeties of 1911-style pistols have contributed to their widespread acceptance as a carry handgun for more than a century.

14. In addition, several California law enforcement agencies, including the Riverside County Sheriff's Department SWAT team, Los Angeles County Sheriffs, and Long Beach Police Department, have adopted Staccato 2011 firearms (a modern take on the 1911 platform with the same "single action only" manner of operation) as a duty-approved, high-performance, and reliable pistol. For example, in selecting

---

[1] For the purposes of this lawsuit, Plaintiffs challenge Contra Costa County's restrictions as to *semiautomatic* SAO firearms. They do not challenge the restriction as to other single action only firearms, such as revolvers like the Colt Single Action Army "Peacemaker" and its modern reproductions.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

the Staccato P, the Riverside County Sheriff's Department concluded, "after months of rigorous testing," that the handgun is a "reliable, accurate, durable and dependable firearm to effectively protect lives in Riverside County." Michael Knetzger, *This SWAT Team Was an Early Adopter of the Staccato P. Here's Why*, Police1, Nov. 29, 2021, https://www.police1.com/police-products/firearms/articles/this-swat-team-was-an-early-adopter-of-the-staccato-p-heres-why-HzFMmzgG3ufkEu8D/. The officer tasked with testing the pistols concluded they are "are just as reliable and much easier to shoot that any other current offering I have tested." *Id*.



Staccato 2011 promoting training it did with the LA County Sheriff's Department. The firearms the Department has adopted include red dot sights and flashlights.
Source - https://www.instagram.com/reel/DA08cZHBjkG/?hl=en

15.    Firearms equipped with red dot sights and flashlights are commonly chosen for self-defense. That is why in most of the country and in most counties and cities in California, many people who legally carry handguns for self-defense include one or both attachments on their pistols. Even though California has some of the nation's strictest gun laws, with several having been struck down as unconstitutional in recent years, the legislature has not seen fit to even attempt to

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

restrict red dot sights, flashlights, or SAO pistols. To Plaintiffs' knowledge, nor do any other counties or cities within California, nor do any other cities or states in the country.

16. The one exception is the Contra Costa County Sheriff's Office under the leadership of Sheriff Livingston. The Sheriff's Office's website states that: "Prohibited firearms include any single action only firearms. This includes any semi-automatic handgun made by any manufacturer built on the Colt 1911 configuration." Contra Costa Sheriff's Office, *Apply for a CCW Permit*, https://www.cocosheriff.org/how-do-i/apply-for-a-ccw-permit (step 5) (last visited Jan. 14, 2026). It also states that: "Firearms with attached laser sights, flashlights, red dots, and sighting systems are not acceptable." *Id*. Defendants' policies ban applicants from listing on their CCW permits or carrying: (1) handguns with attached red dot optics or flashlights, despite these features enhancing safe and accurate shooting; and (2) any semi-automatic handgun made by any manufacturer built on the Colt 1911 configuration or similar.[2] These prohibitions effectively prevent law-abiding citizens from carrying such commonly used arms for self-defense in public.

17. Handguns that operate using an SAO mechanism, and those equipped with red dot sights and flashlights, are in common use; indeed, they are among the most popular firearms and accessories in the nation for self-defense. In fact, the handguns adopted by some of the major law enforcement agencies discussed *supra* are, in fact, *all three*: Single-action only handguns, equipped with red dot sights and flashlights.

18. Despite these facts, under Defendants' policies, Contra Costa County

---

[2] Defendants also restrict other single action only firearms, derringers, laser sights, and also prohibit firearms with modified "triggers, slides, safety mechanisms, conversions, and magazine releases." While Plaintiffs believe these policies also are unconstitutional, their lawsuit here focuses only on the policy as to red dot sights, flashlights, and SAO semiautomatic handguns.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

residents cannot carry SAO 1911-style pistols or attach any kind of red dot sight or flashlight to their carry guns in public for self-defense. Ironically, because California CCW permits are valid statewide, people with permits issued by other counties or cities can legally carry firearms with red dot sights and/or flashlights when visiting or passing through Contra Costa County. They may also carry SAO firearms. Defendants' policies and practices prohibit only residents of Contra Costa County whose rights are hobbled by these unconstitutional policies.

19.     Moreover, Defendants' policies lack any authority under California Penal Code § 26150 *et seq.*, which governs carry permit issuance and does not authorize sheriffs or chiefs of police to impose such arbitrary restrictions on the types of handguns or features that may be carried in public by its residents.

20.     Plaintiffs respectfully request that this Court declare these policies unconstitutional under the Second and Fourteenth Amendments to the United States Constitution, and enjoin their enforcement.

## PARTIES

### Plaintiffs

21.     The individual plaintiffs are ordinary, law-abiding, adult residents of Contra Costa County who desire to carry a firearm in public for lawful self-defense with a red dot sight and/or flashlight attached, and/or they seek to carry a SAO semiautomatic handgun. Both individual plaintiffs named herein have concealed handgun licenses ("CCW permits") issued by Contra Costa County Sheriff's Office, and have refrained from either carrying a SOA 1911-style pistol or attaching a red dot sight and/or flashlight to their CCW firearm.

22.     The individual plaintiffs are natural persons and citizens of the United States and are eligible to possess firearms under state and federal law and currently own at least one firearm.

23.     Specifically, Plaintiff Andrew Moore is a resident of Contra Costa County and a law-abiding citizen of the United States. He has a CCW permit issued

9

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

by the Sheriff's Office, but is forbidden from carrying an SOA 1911-style pistol or attaching a red dot sight and/or flashlight to the firearms he is licensed to carry.

24. Plaintiff Moore has qualified, and he is permitted to carry two handguns as part of his CCW permit. Plaintiff Moore has a Sig Sauer P365 Legion and a Smith and Wesson 2.0 handgun. Both of these firearms can already accept both a red dot sight and a mounted flashlight. However, Plaintiff Moore has refrained from attaching these items to his CCW firearms due to the Defendants' policies and practices and due to his fear of criminal prosecution and/or the loss/revocation of his CCW permit if he were to violate Defendants' policies and practices.

25. Plaintiff James Treuel is a resident of Contra Costa County and a law-abiding citizen of the United States. He has a CCW permit issued by the Sheriff's Office, but is forbidden from carrying an SOA 1911-style pistol or attaching a red dot sight and/or flashlight to the firearms he is licensed to carry.

26. Plaintiff Treuel has qualified, and he is permitted to carry two handguns as part of his CCW permit. Plaintiff Treuel has a Sig Sauer P365 and an HK USP Compact handgun. He can attach both a red dot and a mounted flashlight to his Sig Sauer pistol, and a flashlight to his HK pistol. However, Plaintiff Treuel has refrained from attaching these items to his CCW firearms due to the Defendants' policies and practices and due to his fear of criminal prosecution and/or the loss/revocation of his CCW permit if he were to violate Defendants' policies and practices.

27. Both individual plaintiffs are members of the associational Plaintiff, Second Amendment Foundation.

28. Plaintiff Second Amendment Foundation ("SAF") is a non-profit membership organization. It is incorporated under the laws of the state of Washington and was founded in 1974. SAF has over 720,000 members and

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

supporters nationwide, including members in Contra Costa County. SAF is dedicated to promoting a better understanding of the nation's constitutional heritage and tradition of privately owning, possessing, and carrying firearms, through educational and legal action programs designed to better inform the public. SAF is a pioneer and innovator in defending the right to keep and bear arms, through its publications and public education programs like the Gun Rights Policy Conference. SAF also incurs significant expenses to sponsor public interest litigation to defend its interests and to disseminate information to like-minded individuals. SAF's policies specifically include the dedication of its resources, litigation experience, and economies of scale for the purpose of representing people who would otherwise lack the means and access to resources to successfully bring lawsuits to compel state and local governments to comply with the Constitution, as intended by the Fourteenth Amendment, its enforcement provisions, and Congressional statutes enabling the enforcement of the Constitution by private actors. *See* 42 U.S.C. §§ 1983, 1988. SAF members, including Plaintiffs Moore and Treuel, who wish to carry firearms with common attachments are prohibited from doing so thanks to policies and practices implemented by Defendants. These policies and practices by the Defendants must be enjoined.

## Defendants

29. Defendant Contra Costa County is a political subdivision of the State of California.

30. Defendant Contra Costa County Sheriff's Office is a local government entity created under the laws of the state of California. It exists as an agency and political subdivision of Defendant Contra Costa County. Through the elected Sheriff of Contra Costa County, Defendant David Livingston, the Department is responsible for issuing CCW permits.

31. Defendant Daivd Livingston is the elected Sheriff of Contra Costa County. Defendant Livingston is and, at all times relevant to this complaint, was one

11

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

of the ultimate policymakers for Defendant Contra Costa County Sheriff's Office. He has authority and responsibility under California Penal Code section 26150 to issue CCW permits within the county. He is directly responsible for promulgating, enforcing, and continuing the policies of the Department, including the unlawful policies and procedures complained about herein. Defendant Livingston is sued solely in his official capacity.

32. The true names or capacities—whether individual, corporate, associate or otherwise—of the Defendants named herein as Does 1 through 10 are presently unknown to Plaintiffs and are therefore sued by these fictitious names. Plaintiffs pray for leave to amend this Complaint to show the true names or capacities of these Defendants if and when they have been determined.

## JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT

33. The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331 because the action arises under the Constitution and laws of the United States, thus raising federal questions. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and 42 U.S.C. §1983 because this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of California and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

34. Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202.

35. Plaintiffs' claims for attorney's fees and costs are authorized by 42 U.S.C. § 1988.

36. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims occurred in this district and its Oakland Division. The Contra Costa County Sheriff's Department is located within this district and its Oakland Division.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## GENERAL ALLEGATIONS

37. The Supreme Court has recognized that the Second Amendment protects the individual right to keep and bear arms including, *inter alia*, the right of the people to "possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008).

38. The Supreme Court has also held that the Second Amendment right to keep and bear arms is incorporated by the Fourteenth Amendment, applying equally to prohibit infringement by state and local governments. *See McDonald v. City of Chicago*, 561 U.S. 742, 750, 778 (2010) ("[I]t is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep **and bear** arms among those fundamental rights necessary to our system of ordered liberty.") (emphasis added).

39. *Heller* established a "text, history, and tradition" framework for analyzing Second Amendment questions. *See Bruen*, 597 U.S. at 20-23 (citing *Heller*, 554 U.S. at 634). Under that framework, the *Heller* Court assessed historical evidence to determine the prevailing understanding of the Second Amendment at the time of its ratification in 1791. Based on that assessment, the Court concluded that a District of Columbia statute that prohibited possession of the most common type of firearm in the nation (the handgun) lacked a Revolutionary-era tradition, did not comport with the historical understanding of the scope of the right, and therefore violated the Second Amendment.

40. Most recently, the Supreme Court confirmed and reiterated *Heller*'s historical approach and the standard for applying the Second Amendment:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 597 U.S. at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

(1961)).

41.     In applying that test, the *Bruen* Court confirmed "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." 597 U.S. at 10.

42.     Firearms equipped with red dot sights and/or flashlights are themselves "arms" protected by the Second Amendment, as that term is defined as "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008) (quoting 1 TIMOTHY CUNNINGHAM, A NEW AND COMPLETE LAW DICTIONARY (1771)).

43.     Red dot sights and/or flashlights are "modern instruments that facilitate armed self-defense" and other lawful purposes because they are designed to improve firearm safety and operation. *Bruen*, 597 U.S. at 28. The Supreme Court has explained that the Second Amendment covers "all *instruments* that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* (quoting *Heller*, 554 U.S. at 582) (emphasis added). Indeed, the Supreme Court has summarily reversed a lower court reasoning that an item being "a thoroughly modern invention" is a basis for excluding it from the Second Amendment's scope. *Caetano v. Massachusetts*, 577 U.S. 411, 412 (2016) (per curiam) (citation omitted). It is thus irrelevant whether red dot sights and flashlights existed in the eighteenth and nineteenth centuries.

44.     Indeed, several recent handguns approved by the California Department of Justice for inclusion on the handgun roster it maintains come *from the factory* with red dot sights already installed. Contra Costa's rules thus force individuals who buy those handguns to modify them from their factory setting to be able to carry them, while their rules simultaneously prohibit "firearms that have been modified." For example, the Heckler & Koch VP9F SCS is sold with a Holosun SCS red dot sight already included, and that is the configuration in which the DOJ runs all its

14

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

safety tests on it for inclusion onto the roster.[3] A Contra Costa resident who owns that firearm would presumably not be allowed to carry it, because it is either prohibited because it has a red dot sight, or alternatively, prohibited because it was modified to remove the red dot sight.



The California DOJ-approved Heckler & Koch VP9F SCS as it comes from the factory.

45.     Yet even if red dot sights and flashlights were examined separately from the firearms they are meant to be attached to (or already attached to), and thereby deemed not to be "arms" themselves standing alone, they are still protected by the Second Amendment because they enhance the safe operation of firearms. "The Second Amendment's text is not limited to direct prohibitions on possessing or using firearms. It states that the 'right of the people to keep and bear Arms, *shall not be infringed*.'" *Ortega v. Grisham*, 148 F.4th 1134, 1143 n.3 (10th Cir. 2025). "[F]or

---

[3] Cal. Dep't of Justice, Off. of the Att'y Gen., *VP9F SCS** (Heckler & Koch), https://oag.ca.gov/firearms/handgun/vp9f-scs (last visited June 12, 2026).

15

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

the right to bear arms to have meaning, the Amendment's text must carry an implicit, corollary right to bear the components or accessories necessary for the ordinary functioning of a firearm." *Duncan v. Bonta*, 133 F.4th 852, 866 (9th Cir. 2025). Limiting the effectiveness and safety of handguns carried for self-defense is an infringement on the right to keep and bear arms, even if red dot sights and flashlights are not arms themselves.

46.     As for SAO handguns, those are quite obviously "arms" too. As one example, the 1911 is one of the most influential and popular handguns of all time, and continues to sell well to this day. It was the "standard issue for the United States military for decades." *Miller v. Bonta*, 699 F. Supp. 3d 956, 970 (S.D. Cal. 2023). Multiple compact versions are made specifically for concealed carry use.

47.     Plaintiffs' proposed course of conduct is the same as the proposed course of conduct in *Bruen*: "carrying handguns publicly for self-defense." 597 U.S. at 32. In *Bruen*, New York argued that the Second Amendment "permits a State to condition handgun carrying in areas 'frequented by the general public' on a showing of a nonspeculative need for armed self-defense in those areas." *Id*. at 33. The Supreme Court did not say that "carrying handguns publicly for self-defense without a showing of nonspeculative need" was the proposed course of conduct because that "showing of nonspeculative need" was the *burden on the Second Amendment right*. The burden is not part of the proposed course of conduct; rather, it is the law or practice being challenged. *See United States v. Martinez*, No. 23-cr-114, slip op. at 3 (E.D. Tex. Apr. 14, 2025) ("The Government next suggests that the 'conduct' covered by the text of the Second Amendment should be defined narrowly to fit the precise conduct regulated by § 922(d)(10)—something like 'selling a firearm to a drug trafficker.' . . . But this impermissibly conflates the two steps of *Bruen*.") In the same way, Plaintiffs here need not define their proposed course of conduct as, for example, "carrying handguns publicly for self-defense with popular attachments that enhance safety and usability." *Bruen*'s simpler "carrying handguns publicly for self-

16

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

defense" applies in this case.

48.     Alternatively, Plaintiffs' more specific proposed course of conduct is lawfully carrying firearms publicly for self-defense with popular attachments that enhance safety and usability, and/or carrying SAO semiautomatic handguns. Plaintiffs allege that Contra Costa County Sheriff's Office policies prevent them from doing so. Plaintiffs further allege that no historical tradition of valid laws or regulations from the applicable historical period entirely prohibited the carry of certain firearms based on common attachments, nor were popular firearms prohibited from being carried entirely.

49.     The Supreme Court has been clear: the marketplace of lawful gun owners determines what arms are protected by the Second Amendment by adopting them into common use. The wisdom of the Court's common use test is fully illustrated by Defendant's challenged policies, and their attempt to unilaterally demonize and prohibit the use of commonly owned accessories which serve only to make the firearms to which they are attached *safer* to use, and time-tested single-action firearms that have been in safe and effective civilian, military, and law enforcement use for over a century.

50.     California State law sets forth objective requirements for a licensing scheme to issue CCW permits.

51.     California Penal Code sections 26150, 26155, and 26170 provide that a sheriff of a county or the chief or other head of a municipal police department of any city or city and county, upon proof that the applicant meets the statutory qualifications, shall issue or renew a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person.

52.     California Penal Code § 26175 mandates a state-wide uniform application process for issuance of CCW permits and requires the Attorney General to issue a statewide standard application form for CCW licenses. Those qualifications and standards are set forth in form BOF-4012 (includes the

17

standardized application usually filled out online), which is published by the California Department of Justice and is available at: https://oag.ca.gov/system/files/media/bof-4012.pdf.

Generally, California law imposes the following CCW permit application requirements:

> (a) When a person applies for a new license or license renewal to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county shall issue or renew a license to that person upon proof of all of the following:
>
> (1) The applicant is not a disqualified person to receive such a license, as determined in accordance with the standards set forth in Section 26202.
>
> (2) The applicant is at least 21 years of age, and presents clear evidence of the person's identity and age, as defined in Section 16400.
>
> (3) The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business. Prima facie evidence of residency within the county or a city within the county includes, but is not limited to, the address where the applicant is registered to vote, the applicant's filing of a homeowner's property tax exemption, and other acts, occurrences, or events that indicate presence in the county or a city within the county is more than temporary or transient. The presumption of residency in the county or city within the county may be rebutted by satisfactory evidence that the applicant's primary residence is in another county or city within the county.
>
> (4) The applicant has completed a course of training as described in Section 26165.
>
> (5) The applicant is the recorded owner, with the Department of Justice, of the pistol, revolver, or other firearm for which the license will be issued.

Cal. Penal Code § 26150(a); *see id.* § 26155(a) (listing the same requirements for when a city's Police Department conducts permit issuance). *See also* § 26170 (listing requirements for deputized persons).

53.     While Cal. Penal Code Section 26200(b) allows issuing authorities to include "reasonable restrictions or conditions that the licensing authority deems

18

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

warranted" on the CCW permit it issues, restricting the use of flashlights, red dot sights, and SAO semiautomatic handguns is not a "reasonable restriction" both because it violates the Second Amendment for all the practical reasons discussed above.

54. Further, to Plaintiffs' knowledge, no other issuing authority in California has similar restrictions, which also underscores the unreasonableness of Defendants' policies. Finally, the intent behind Section 26200(b) was not to give issuing authorities like Defendants broad discretion to implement any idiosyncratic rules they want, but rather was meant for "restrictions as to the time, place, manner, and circumstances under which a licensee may carry a pistol, revolver, or other firearm capable of being concealed upon the person."

55. To be clear, Plaintiffs do not bring any claim rooted in California law in this lawsuit. They include reference to the California Penal Code only to provide context and further emphasize how unreasonable Defendants' policies are, in addition to being unconstitutional under the Second Amendment. Defendants are both violating the Second Amendment and acting beyond the authority that even state law has granted them.

56. As explained in a recent ruling from the Central District of California, when a Sheriff issuing CCW permits acts beyond the scope of authority granted to him by state law, he is no longer a state actor immune from claims for damages, including the nominal damages Plaintiffs seek here. *See Cal. Rifle & Pistol Ass'n v. L.A. Cty. Sheriff's Dep't*, No. 2:23-cv-10169-SPG-ADS, 2025 U.S. Dist. LEXIS 169766, at *38 (C.D. Cal. July 21, 2025) ("Thus, on the 'particular issue' that is raised by Plaintiffs' *Monell* claim—namely, any issuance of a decision on a CCW permit application in excess of the statutory time frame—a county sheriff would necessarily act as his or her own policymaker to the extent that sheriff has a 'policy or practice' of issuing decisions on CCW permit applications in excess of the time provided in the California Penal Code § 26205(a).").

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## DECLARATORY AND INJUNCTIVE RELIEF

57.     Under *Bruen*, Defendants bear the heavy burden of proving their policies comply with the Second and Fourteenth Amendments. They will fail to do so, because their practices have no textual or historical pedigree, representing novel schemes developed in recent years or decades.

58.     Accordingly, Plaintiffs seek declaratory relief confirming that Defendants' policies against firearms equipped with red dot sights and/or flashlights, and SAO 1911-style handguns are entirely without any relevant historical precedent. They are both facially unconstitutional and unconstitutional as applied to the Plaintiffs and the members and supporters of the associational Plaintiffs.

59.     Plaintiffs seek injunctive relief to compel Defendants to comply with the Second Amendment, as clarified by *Bruen*, and the Fourteenth Amendment's procedural due process guarantees. Contra Costa County's CCW permit policies against red dot sights, flashlights, and SAO semiautomatic handguns must be immediately enjoined.

### FIRST CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF
#### U.S. Const. Amends. II, XIV
#### Right to Bear Arms
#### 42 U.S.C. § 1983

(By All Plaintiffs Against All Defendants)

60.     Plaintiffs hereby reallege and incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

61.     Defendants' policies prohibiting CCW permit holders from carrying handguns equipped with red dot sights and/or flashlights, or Single Action Only 1911-style handguns entirely, infringe on Plaintiffs' Second Amendment right to bear arms in public for self-defense.

62.     These policies are not consistent with the Nation's historical tradition of firearm regulation and thus fail under *Bruen*.

63.     As a result, Plaintiffs' Second Amendment rights, as applied to

20

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

California under the Fourteenth Amendment, as well as the rights of the associational plaintiff's members and supporters, are violated.

64. Defendants are thus propagating customs, policies, and practices that infringe on Plaintiffs' constitutional right to bear arms outside the home for self-defense "in case of confrontation," as guaranteed by the Second and Fourteenth Amendments.

65. Defendants cannot satisfy their burden to justify these customs, policies, and practices that preclude or inhibit and therefore infringe Plaintiffs' exercise of their enumerated rights.

66. Plaintiffs are thus entitled to nominal damages, declaratory, and injunctive relief, and fee recovery against such unconstitutional customs, policies, and practices.

///

///

21

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**PRAYER**

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1. A declaratory judgment that Defendants' policies banning red dot sights, weapon-mounted lights, and SAO 1911-style handguns from being carried in conjunction with a CCW permit violate the Second and Fourteenth Amendments;

2. A declaration that the associational plaintiff's resources and litigation experience are necessary to vindicate the Second Amendment rights of individual Plaintiffs who lack the means and capacity to challenge the constitutionality of the practices of Defendants;

3. An order enjoining all Defendants and all other officers, agents, servants, employees, and persons under the authority of the State, from enforcing the challenged policies, either in general, or at a minimum, as against the individual plaintiffs and all members of Second Amendment Foundation;

4. Costs of suit, including attorney's fees and costs pursuant to 42 U.S.C. § 1988;

5. Nominal damages; and

6. All other relief the court deems appropriate.

Respectfully submitted,

June 17, 2026

John W. Dillon
Counsel for Plaintiffs

June 17, 2026                    **Second Amendment Foundation**

Konstadinos T. Moros
Counsel for Plaintiff Second Amendment
Foundation

22

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**ATTESTATION OF E-FILED SIGNATURES**

I, John W. Dillon, am the ECF User whose ID and password are being used to file this COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF. In compliance with Northern District of California L.R. 5-1(i)(3), I attest that all signatories are registered CM/ECF filers and have concurred in this filing.

June 17, 2026

*/s/ John W. Dillon*
John W. Dillon
Counsel for Plaintiffs

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## PROOF OF SERVICE

I declare that I am employed with the law firm of Dillon Law Group APC, whose address is 2647 Gateway Road Suite 105, No. 255, Carlsbad, California 92009. I am not a party to the within cause, and I am over the age of eighteen years.

I further declare that on June 17, 2026, I served a copy of the following document(s):

1. **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF 42 U.S.C. §§ 1983 & 1988**

2. **PROPOSED SUMMONS**

**BY OVERNIGHT DELIVERY [Code Civ. Proc. sec. 1013(d)]** by placing a true copy thereof enclosed in a sealed envelope with delivery fees provided for, addressed as follows, for collection by either Golden State Overnight or Federal Express, at 2647 Gateway Road Suite 105, No. 255, Carlsbad, California 92009 in accordance with Dillon Law Group APC's ordinary business practices.

I am readily familiar with Dillon Law Group APC's practice for collection and processing of correspondence for overnight delivery and know that in the ordinary course of Dillon Law Group APC's business practice the document(s) described above will be delivered to an authorized courier or driver authorized by Golden State Overnight, or Federal Express, to receive documents on the same date that it (they) is (are) placed at Dillon Law Group APC for collection.

### SEE ATTACHED LIST

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Carlsbad, California on June 17, 2026.

*/s/ John W. Dillon*
John W. Dillon

24

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF